# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ALMA R. OLIVAS, ) <br> ) <br>       **Plaintiff,** ) <br> ) <br> v. ) <br> ) <br> BENTWOOD PLACE APARTMENTS, LLC, ) <br> and MARK JOHNSON, ) <br> ) <br>       **Defendants.** ) <br> _____) | Case No. 09-4035-JAR |

## MEMORANDUM AND ORDER

This matter is before the Court on plaintiff's Application for Default Judgment (Doc. 22) and defendants' Motion to Set Aside Default Judgment (Doc. 27). The Court held a hearing on May 17, 2010. The parties presented arguments and evidence in support of their motions. After the hearing, the parties fully briefed the issues raised in defendants' motion to set aside default judgment. The Court has reviewed the evidence and the parties' submissions and is prepared to rule. For the reasons stated in detail below, the Court denies defendants' motion to set aside entry of default and grants plaintiff's motion for default judgment.

**I.**  **Procedural History**

On April 6, 2009, plaintiff filed this action *pro se*, alleging that her employer, Bentwood Place Apartments, LLC ("Bentwood"), discriminated against her on the basis of race, sex, and national origin. Service of the Summons and Complaint were made by certified mail on defendants Bentwood and Marc Johnson[1] ("Johnson") on April 15, 2009, at the Topeka address of Bentwood. Angela Davis ("Davis"), the office manager for Bentwood, signed for both pieces

---

[1]In the parties' briefs, Johnson's name is spelled either "Mark" or "Marc." Consistent with Johnson's affidavit (Doc. 29), the Court refers to him as Marc Johnson.

of certified mail as an agent for Bentwood and Johnson. No Answer was filed by the May 5, 2009 deadline. Plaintiff's motion for appointment of counsel was granted and counsel L.J. Leatherman was appointed on August 26, 2009.

More than four months after the Answer date, plaintiff filed an application for clerk's entry of default on September 24, 2009. On December 11, 2009, the Clerk entered a Clerks' Entry of Default against defendants. On March 2, 2010, ten months after the Answer date, plaintiff moved for default judgment. The hearing on plaintiff's motion for default judgment was scheduled for April 19, 2010, but continued to May 17, 2010, on plaintiff's motion. Finally, on May 11, 2010, more than a year after the Answer date, counsel for defendants Bentwood and Johnson entered an appearance; and on May 14, defendants moved to set aside the entry of default.[2]

The hearing was held on May 17, and evidence and argument were heard on both motions. Plaintiff presented evidence of damages in the total amount of $198,745.45 comprised of: compensatory damages of $50,000, including pain and suffering caused by racially derogatory comments to and about plaintiff, and a racially motivated decision to terminate her; back pay of $63,066.35; and front pay of $85,679.10. While arguing that there was good cause for their failure to Answer or otherwise plead or defend, defendants did not present evidence on damages or otherwise challenge plaintiff's evidence.

After the hearing, the Court invited the parties to submit additional information by affidavit or pleading. Defendants availed themselves of this opportunity. Johnson filed an affidavit that addressed the issue of good cause for failing to answer or defend, but did not

---

[2](Doc. 27.)

address or even mention damages. In addressing the issue of good cause, Johnson explained in his affidavit that although he is the owner of Bentwood in Topeka, Kansas, he lives in Florida and was not in Kansas to review the actual summons and complaint. Johnson relied upon his staff in the Kansas office, and specifically, office manager Davis, to handle problems and apprise him of problems. On May 8, 2009, Davis was fired from Bentwood for theft. Before her termination, she told defendants she had handled the Olivas matter. Defendants believed their decision to terminate plaintiff was justified and believed that, because the Equal Employment Opportunity Commission ("EEOC") had found plaintiff's complaint was unsubstantiated, the case was closed.

## II. Motion to Set Aside Entry of Default

Defendants incorrectly ask for relief from "default judgment" under Rule 60(b), as default judgment has not yet been entered. Defendants ask that they not be punished for their ignorance of the legal process and their reliance upon an employee who proved to be unreliable.[3]

Under Rule 55(c), the court may set aside an entry of default for good cause, and may set aside a default judgment under Rule 60(b). "The Court applies the same considerations when deciding whether to set aside either an entry of default or a default judgment, but they are applied more liberally when reviewing an entry of default."[4] "This good cause standard under Rule 55(c) is a lesser standard than excusable neglect standard required to obtain relief from

---

[3]In plaintiff's response brief, she asks the Court to deny defendants' motion for failure to comply with District of Kansas Rule 7.1(a), requiring a motion be "accompanied by a brief or memorandum." Because plaintiff subsequently filed an affidavit, at the direction of the Court, and filed a reply brief with supporting citations to law, the Court finds plaintiff's request moot.

[4]*Clelland v. Glines*, Case No. 02-2223-KHV, 2003 WL 21105084, at *3 (D. Kan. Apr. 11, 2003) (citing *Berthelsen v. Kane*, 907 F.2d 617, 620 (6th Cir. 1990)).

3

judgment under Rule 60(b)."[5] Here, the Clerk entered default, but default judgment has not yet been entered. Thus, defendants need only show "good cause."

> The principal factors in determining whether defendant has shown good cause to set aside an entry of default include (1) whether the default resulted from culpable conduct by defendant, (2) whether plaintiff would be prejudiced if the Court sets aside the default and (3) whether defendant has presented a meritorious defense. These factors are not "talismanic" and the Court may consider other factors. The standard for setting aside an entry of default under Rule 55(c) is fairly liberal because "[t]he preferred disposition of any case is upon its merits and not by default judgment."[6]

The court need not consider all the factors, but must "balance the interests of the defendants in the adjudication of the case on the merits, against the interests of the public and the court in the orderly and timely administration of justice."[7] The Tenth Circuit has counseled that

> default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party. In that instance, the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights. The default judgment remedy serves as such a protection.[8]

### A. Defendants' Culpability

Under the first factor, a defendant's conduct is considered culpable if he defaulted willfully or has no excuse for the default.[9] A defendant's knowledge of a lawsuit and his post-

---

[5] *Bollacker v. Oxford Collection Agency, Inc.*, No. 07-cv-01730, 2007 WL 3274435, at *1 (D. Colo. Nov. 5, 2007).

[6] *Crutcher v. Coleman*, 205 F.R.D. 581, 584 (D. Kan. 2001) (internal citations omitted).

[7] *McCook v. Flex Fin. Holding Co.*, Case No. 08-2039-CM-GLR, 2008 WL 1924129, at *2 (D. Kan. Apr. 29, 2008) (citing *Hunt v. Kling Motor Co.*, 841 F. Supp. 1098, 1106 (D. Kan. 1993)).

[8] *In re Rains*, 946 F.2d 731, 732–33 (10th Cir. 1991) (quoting *Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1444 (10th Cir. 1983)).

[9] *United States v. Timbers Preserve, Routt County, Colo.*, 999 F.2d 452, 454 (10th Cir. 1993).

4

service actions "play a role in measuring the willfulness of a defendant's default."[10] When a party has actual or constructive notice of a lawsuit, yet completely fails to answer or otherwise communicate with the Court, defendant's failure is willful and "demonstrates complete disregard for the authority of the Court."[11] This culpable conduct by a defendant under these circumstances caused the default.[12] If the default was the result of defendant's culpable conduct, "the district court may refuse to set aside the default on that basis alone."[13] Out of an abundance of caution, however, the Court considers the remaining two factors as well.

Here, defendants had actual knowledge of the lawsuit. Johnson admits that he spoke with Davis about the case before she was terminated on May 8, 2009. According to defendants, Davis's employment was terminated due to theft, yet they apparently continued to rely on her representation that the matter was closed, without taking any further steps to verify her allegations.

Furthermore, after Davis's termination, Bentwood and Johnson received service of other documents in this case over the course of ten months, evidencing that the case was not closed. Yet, neither defendant took any action to respond. Defendants took no action to respond when: (1) on September 2, 2009, plaintiff's counsel entered an appearance and both defendants were

---

[10] *Jenkens & Gilchrist v. Groia & Co.*, 542 F.3d 114, 123 (5th Cir. 2008).

[11] *Crutcher v. Coleman*, 205 F.R.D. 581, 584 (D. Kan. 2001) (citing *Hunt v. Ford Motor Co.*, 65 F.3d 178, 1995 WL 523646, at *3 (10th Cir. 1995); *Ledbetter v. Kan. Dep't Soc. & Rehab. Servs.*, Case No. 99-2261-KHV, 2000 WL 206208 (D. Kan. 2000)); *Hunt v. Kling Motor Co.*, 841 F. Supp. 1098, 1106 (D. Kan. 1994) ("A defendant's conduct has been determined to be 'culpable' if he has received actual or constructive notice of the filing of the action and failed to answer.").

[12] *Crutcher*, 205 F.R.D. at 584.

[13] *Id.*; *Hunt*, 841 F. Supp. at 1107; *see also Guttman v. Silverberg*, 167 F. App'x 1, 3 (10th Cir. 2005) ("even where there is a meritorious defense and no prejudice to the adversary, '[w]illful failure alone may constitute sufficient cause for the court to deny th[e] motion.'").

served with plaintiff's Entry of Appearance; (2) on September 24, 2009, plaintiff filed an Application for Entry of Default, which was served on defendants in Topeka, as well as Johnson's residential address in Florida; (3) on September 25, 2009, plaintiff responded to a show cause order, and mailed her response to Bentwood and Johnson in Kansas and Florida; (4) on December 11, 2009, the clerk entered default; and plaintiff's counsel mailed a copy of the entry to both defendants at all available addresses; and (5) on March 2, 2010, plaintiff moved for default judgment and mailed a copy to defendants, once again, at all available addresses. Defendants even received a copy of plaintiff's motion to continue the damages hearing, filed on March 9, 2010. But defendants did not enter an appearance until May 11, 2010, and did not file their Motion to Set Aside Default Judgment (sic) until five days before the May 17 hearing on damages. The defendants were obviously well-aware of the lawsuit since May 2009, when they spoke with Davis about it, and well-aware of the ongoing activity in the lawsuit before and after Davis's termination. Defendants took no initiative to inquire about the case or communicate with the Court until the case had proceeded for nearly a year without them. Such conduct was willful, and thus, defendants caused the default in this case.

### B. Prejudice to Plaintiff

The second factor is whether plaintiff would be prejudiced if default were set aside. Prejudice to the plaintiff refers to "acts done by the moving party or events that have occurred which have in some way impaired or thwarted the non-moving party's ability to litigate or defend the case."[14] This action proceeded for eight months from the date of filing until default was entered and another five months elapsed before defendants entered an appearance, just five

---

[14] *McCook v. Flex Fin. Holding Co.*, Case No. 08-2039-CM-GLR, 2008 WL 1924129, at *2 (D. Kan. Apr. 29, 2008).

days before the hearing on damages. The time and expense necessary to pursue an action that is more than a year old would prejudice plaintiff.[15]

### C. Meritorious Defense

Finally, although "[t]he burden to show a meritorious defense is light,"[16] defendants have not met their burden here. "The party moving to set aside default must make a sufficient elaboration of facts to permit the trial court to judge whether the defense, if movant's version were believed, would be meritorious."[17] A movant's version of the facts and circumstances supporting his defense will be taken as true,[18] but a conclusory allegation of a defense, unsupported by facts underlying that defense, will not sustain the burden of the defaulting party.[19]

But neither in their motion to set aside entry of default, nor at the hearing, nor in their post-hearing submission, did defendants articulate any defenses to plaintiff's claims, other than defendants' counsel's statement at the hearing that defendants may have thought plaintiff was stealing from the company.

### D. No Good Cause

In short, defendants have failed to establish good cause to set aside the clerk's entry of default. Defendants rely on two excuses for failing to act in this case. First, at the time the

---

[15]*See Vibe Tech., LLC v. Suddath*, Case No. 06-cv-00812-LTB-MEH, 2007 WL 3171418, at *4 (D. Colo. Oct. 25, 2007).

[16]*Super Film of Am., Inc. v. UCB Films, Inc.*, Case No. 02-4146-SAC, 2004 WL 2413497, at *2 (D. Kan. Sept. 23, 2004) (quoting *In re Stone*, 588 F.2d 1316, 1319 (10th Cir. 1978)) (internal quotation marks omitted).

[17]*Id.*

[18]*In re Stone*, 588 F.2d at 1319–20.

[19]*Gomes v. Williams*, 420 F.2d 1364, 1366 (10th Cir. 1970) (applying this reasoning under Rule 60(b)).

original summons was served, Davis signed the return receipt and represented to them that the matter was closed. Johnson states in his affidavit that he "did not carefully review any information that may have been mailed to [his] office in Florida because [he] believed that the Federal case had been dismissed." But, this fact alone does not demonstrate "good cause" why defendants failed to respond to the lawsuit after receiving personal service of six documents relating to this case long after Davis's employment had been terminated. Second, defendants argue that they misunderstood the relationship between the administrative process and the federal judicial process, erroneously believing that the EEOC's decision resolved the matter and the federal case would be dismissed. But this is unsupported by the record, given defendants receipt of numerous notices and copies of pleadings over the thirteen month life of this case. The Court cannot find good cause in defendants' decision to remain willfully ignorant of an ongoing action against them when plaintiff made valiant efforts to notify them.[20]

Default judgment serves to protect a plaintiff when the "adversary process has been halted because of an essentially unresponsive party."[21] Such is the case before the Court. Plaintiff should not be further subjected to "interminable delay and continued uncertainty as to [her] rights."[22] The Court declines to set aside the entry of default.

## III. Standards for Default Judgment

Plaintiff has moved for default judgment, in recognition that after the clerk enters default,

---

[20]*See McKinnon v. Kwong Wah Rest.*, 83 F.3d 489, 504 (1st Cir. 1996) (upholding district court decision to deny motion to set aside entry of default because defendant's reluctance to rectify the situation in a timely manner, and defendant's hope that "it 'would all go away'" were not "good cause" under Rule 55(c)). "Litigants must act punctually and not casually or indifferently if a judicial system is to function effectively." *Id.*

[21]*Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1444 (10th Cir. 1983) (quoting *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)).

[22]*Id.*

8

if plaintiff's claim is not for a sum certain, plaintiff must apply to the Court for default judgment.[23] When entering default judgment and determining damages under Fed. R. Civ. P. 55(b), the Court is permitted to hold a hearing when necessary to: (a) conduct an accounting; (b) determine the amount of damages; (c) establish the truth of any allegation by evidence; or (d) investigate any other matter.[24]

"Once the default is established, defendant has no further standing to contest the factual allegations of plaintiff's claim for relief."[25] "The well-pleaded factual allegations of the plaintiff's complaint are taken as true, except those allegations relating to the amount of damages."[26] A trial court has broad discretion in deciding whether to enter a default judgment.[27] "Even after default, it remains for the court to consider whether the unchallenged facts constitute a legitimate basis for the entry of a judgment since a party in default does not admit conclusions of law."[28] Furthermore, a default judgment does not establish the amount of damages.[29] Plaintiff must establish that the amount requested is reasonable under the circumstances.[30] "Damages

---

[23]Fed. R. Civ. P. 55(b).

[24]Fed. R. Civ. P. 55(b)(2).

[25]*DeMarsh v. Tornado Innovations, L.P.*, Case No. 08-2588-JWL, 2009 WL 3720180, at *2 (D. Kan. Nov. 4, 2009) (quoting 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 2688 (3d ed. 1998); *see also Olcott v. Del. Flood Co.*, 327 F.3d 1115, 1125 n.11 (10th Cir. 2003) (after an entry of default, a defendant cannot defend a claim on the merits)).

[26]*DeMarsh*, 2009 WL 3720180, at *2.

[27]*Galloway v. Hadl*, Case No. 07-3016-KHV, 2008 WL 5109758, at *1 (D. Kan. Dec. 2, 2008) (citing *Grandbouche v. Clancy*, 825 F.2d 1463, 1468 (10th Cir. 1987)).

[28]*Seme v. E&H Prof'l Sec. Co., Inc.*, Case No. 08-cv-01569-RPM-KMT, 2010 WL 1553786, at *2 (D. Colo. Mar. 19. 2010) (internal quotations omitted).

[29]*DeMarsh*, 2009 WL 3720180, at *2.

[30]*Id.*

may be awarded only if the record adequately reflects the basis for [the] award via a hearing or a demonstration by detailed affidavits establishing the necessary facts."[31]

## IV. Findings of Fact

At the hearing to establish damages, plaintiff testified as to her loss of income, her effort to mitigate damages by seeking subsequent employment, and the pain and suffering she experienced as a result of the humiliation of losing her job. Defendants did not personally appear and no witnesses were called on their behalf. Defense counsel did not cross-examine plaintiff on her alleged damages. The Court took the matter under advisement. Having reviewed the evidence and the applicable law, the Court makes the following findings.

### A. Plaintiff is Entitled to Damages

The Court finds that plaintiff is entitled to damages, based on these facts, taken from plaintiff's Complaint and attached exhibits, as well as testimony and evidence presented at the hearing.

Plaintiff filed this lawsuit against Bentwood and Johnson, on behalf of Bentwood, alleging that they violated Title VII of the Civil Rights Act of 1964, the Kansas Act Against Discrimination, and Topeka City Ordinance No. 18735 sec. 86.1, when defendants discriminated against her on the basis of her race, sex, and national origin.

Plaintiff is a Hispanic female, born in Mexico. Plaintiff was employed at Bentwood from 2005 until 2008, as the onsite property manager. During her tenure, about two months before her termination, Bentwood was sold to a new owner, defendant Johnson. Under this new management, plaintiff was offered, and she accepted, the same rate of pay and benefits.

---

[31]*Id.* (quoting *Adolph Coors Co. v. Movement Against Racism & The Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985)) (internal quotation marks omitted).

Additionally, Bentwood provided plaintiff with a free apartment with all rent and utilities paid; the apartment was provided with the understanding that plaintiff would have thirty days to vacate if she were terminated.

During the two months that plaintiff worked at Bentwood under Johnson's direction, Bentwood management directed plaintiff to ask illegal questions, to hire undocumented Hispanic employees, and told to have undocumented immigrants perform plumbing and electrical work without the proper permits.[32] During this same time, plaintiff and other employees received insufficient funds checks for their pay and vendors received insufficient funds checks as well. When plaintiff questioned a member of management staff about this, the director told her to find another job, and on May 12, 2008, plaintiff was terminated and given no valid business reason for her termination.

Plaintiff testified that she was subjected to disparate treatment regarding the terms, conditions and privileges of her employment because of her sex and national origin. She testified that Bentwood's management would not have treated a similarly-situated Caucasian male employee in the same manner as she was treated by Bentwood's management. Plaintiff was verbally mistreated when she was called an "illegal Mexican," an "illegal Hispanic," or an "illegal woman" because of her race, national origin and gender. Management also called her an "illegal alien." Plaintiff testified that she was terminated because of her race and national origin, and because she argued about directions to engage in illegal hiring and employment practices based on race and national origin. Even after her termination, and while she still resided at the apartment complex, Bentwood management continued to call plaintiff an "illegal alien."

---

[32]In her letter to the Kansas Department of Labor, she states that, following her complaint, she learned that defendants "fired or transferred all the illegal immigrants." (Doc. 1, Ex. 3 at 3.)

Consequently, plaintiff suffered loss of respect and reputation.

  **B.**   **Type and Amount of Damages**

  Plaintiff testified that she had received income, benefits and regular bonuses from Bentwood. She calculated that she received gross weekly wages of $550 ($13.75 per hour for 40 hours a week). She was also paid $50 for each renewal and each new rental, bonuses that averaged $250 per week in the last few weeks of plaintiff's employment there. Plaintiff also received a rent- and utility-paid apartment, a benefit that included: the apartment valued at $580 per month; storage space valued at $415 per month; and utilities of approximately $312.45 per month. From this, plaintiff calculated $57,119.40 in total annual salary and benefits, comprised of: $27,500 in salary; $12,500 in bonuses; $15,689.40 in benefits;[33] and an estimated thirteen days of vacation worth $1,430.

  After she was terminated, plaintiff was unemployed from May 13, 2008 to June 24, 2008. During this time, she received unemployment from the Kansas Department of Labor.[34] She then went to work for a property management company, and its successor company, from June 25, 2008 to August 21, 2009, when she changed employment and began working as an onsite manager for an employment agency. While plaintiff was still working for that company at the time of the May 17, 2010 hearing, she testified that she expected to lose the position when the company closed its Topeka office at the end of May 2010. Plaintiff had not secured new employment.

---

[33]Exhibit 1 states that plaintiff's annual benefits while at Bentwood totaled $15,684.40, but the Court has reviewed the calculations and determined that her annual benefits totaled $15,689.40. Nevertheless, plaintiff's total annual income is correctly calculated as $57,119.40.

[34]Unemployment compensation is a collateral source of income and should not be used to off set a back pay award. *Leidel v. Ameripride Servs., Inc.*, 276 F. Supp. 2d 1138, 1144 (D. Kan. 2003).

## V. Conclusions of Law

### A. Subject Matter Jurisdiction

Before it may enter default judgment, the Court has an affirmative duty to determine whether it has subject matter jurisdiction.[35] Title VII is a federal cause of action for employment discrimination.[36] As a jurisdictional prerequisite, plaintiff must exhaust all administrative remedies before bringing a claim in federal court.[37] Here, plaintiff alleges she filed a complaint with the EEOC on July 2, 2008, and with the Kansas Human Rights Commission ("KHRC") on August 6, 2008. On or about January 7, 2009, the EEOC issued to plaintiff a Notice of Suit Rights. On April 6, 2009, plaintiff filed a Complaint with the federal district court, attaching a copy of the Notice of Suit Rights. Based on the facts alleged in her Complaint, her administrative claim was filed within 300 days of her termination, and this lawsuit was filed within 90 days of the EEOC Notice of Suit Rights. The Court finds it has subject matter jurisdiction over plaintiff's Title VII claims. On the other hand, the Court does not have jurisdiction over plaintiff's claims brought under the Kansas Act Against Discrimination, as by plaintiff's own admission, that

---

[35] *See Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).

[36] Although the Tenth Circuit treats the question of whether a defendant is an "employer" under Title VII as an issue of subject matter jurisdiction that is intertwined with the merits of the claim, there is no dispute here that Bentwood is such an employer. *See Burgett v. Utah Valley Veterinary Hosp.*, 97 F. App'x 874, 875 (10th Cir. 2004); *Wheeler v. Hurdman*, 825 F.2d 257, 259–60 (10th Cir. 1987); *Owens v. Rush*, 636 F.2d 283 (10th Cir. 1980); *see also Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 78 (3rd Cir. 2003) (noting the Tenth Circuit's stance on this issue makes the matter jurisdictional and a matter to be resolved on the merits).

[37] The Tenth Circuit has distinguished between a plaintiff's failure to exhaust administrative remedies, which creates a jurisdictional bar to suit, and plaintiff's failure to timely exhaust administrative remedies, which is an affirmative defense subject to equitable tolling. *See Jones v. Runyon,* 91 F.3d 1398, 1399 n.1 (10th Cir.1996) (noting that the Tenth Circuit's precedent was somewhat inconsistent, but concluding that, although timeliness is not jurisdictional, exhaustion is jurisdictional under Tenth Circuit law); *see also Low v. Chu*, Case No. 09-CV-0398-CVE-PJC, 2010 WL 503109, at *3 (N.D. Okla. Feb. 8, 2010) (noting that exhaustion is jurisdictional, but timely exhaustion is not jurisdictional and may be waived or tolled).

administrative action was still pending at the time she brought this lawsuit.[38]

## B. Personal Jurisdiction

Before a court has power to enter default judgment, it must determine whether it has jurisdiction over the parties.[39] In evaluating personal jurisdiction over a nonresident defendant, the Court considers "(1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process."[40] The Court finds that is has personal jurisdiction over defendant Bentwood. The Court further finds that it has personal jurisdiction over defendant Johnson, who was sued not individually, but in his capacity as the owner and agent of defendant Bentwood.

Here, the summons and complaint were delivered to the main office at Bentwood, in Topeka, Kansas, via certified mail. Davis, a managing employee working for the company at its main office, accepted service of process on behalf of the company. She signed the return receipt as an agent for the company. She also received service for Johnson. Although Johnson is listed

---

[38]Pursuant to K.S.A. § 44-1005(i), if the Kansas Human Right Commission has not issued a finding of probable cause or no probable cause within 300 days of the filing of the complaint, the complainant may make a written request to have the complaint dismissed. *Id.* "Any such dismissal of a complaint in accordance with this section shall constitute final action by the commission which shall be deemed to exhaust all administrative remedies under the Kansas act against discrimination for the purpose of allowing subsequent filing of the matter in court by the complainant." *Id.* If plaintiff did not request that her complaint be dismissed, the Court finds she has not exhausted her administrative remedies on her state law claims. *See Sandlin v. Roche Labs., Inc.*, 991 P.2d 883 (Kan. 1999) (noting that § 44-1005(i) allows a complainant to request dismissal, but only if 300 days have passed and no finding has yet been made); *Van Scoyk v. St. Mary's Assumption Parochial School*, 580 P.2d 1315, 1316–18 (Kan. 1978); *Parsells v. Manhattan Radiology Group, L.L.P.*, 255 F. Supp. 2d 1217, 1228 n.4 (D. Kan. 2003) (explaining § 44-1005(i)); *Butler v. Capitol Fed. Sav.*, 904 F. Supp. 1230, 1234 (D. Kan. 1995) (dismissing claims for failure to exhaust even though KAAD claim had been pending two years); *Freeman v. Kan. State Network, Inc.*, 719 F. Supp. 995, 997–98 (D. Kan. 1989) (finding that state law claims were appropriately added to federal complaint only after Kansas Commission on Civil Rights dismissed the administrative claims).

[39]*Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1202 (10th Cir. 1986).

[40]*Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006) (quoting *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000)).

as an individual defendant in this case, it does not appear he was served in his individual capacity. Rather, he was served "on behalf of Bentwood Place Apartments LLC." Johnson is the owner of Bentwood Place Apartments and Davis was the office manager at the time service was effected. As an agent for the LLC, Johnson was properly served at the address of his business. In both cases, plaintiff filed a copy of the return receipt electronically.[41] This comports with the requirements under Fed. R. Civ. P. 4(h), which provides that service on a domestic corporation, partnership or other unincorporated association may be served in a judicial district of the United States in any manner permitted under state law for serving a summons in an action in state court,[42] or by delivering a copy of the summons and complaint "to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process."[43]

### C. Damages Available Under Title VII

Under Title VII, the following damages are recoverable: compensatory damages,[44] front pay,[45] and back pay.[46] "In ruling on a motion for default judgment, the court may rely on detailed affidavits or documentary evidence to determine the appropriate sum for default judgment."[47] Although punitive damages are permitted upon a proper showing, at the hearing, plaintiff did not

---

[41]*See* K.S.A. § 60-303(c)(4).

[42]*See* Fed. R. Civ. P. 4(h)(1)(A) and 4(e)(1).

[43]Fed. R. Civ. P. 4(h)(1)(B).

[44]42 U.S.C. § 1981a(b)(3).

[45]42 U.S.C. § 2000e-5(g)(1) ("If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may . . . order . . . any other equitable relief as the court deems appropriate").

[46]*Id.*

[47]*Seme v. E&H Prof'l Sec. Co., Inc.*, Case No. 08-cv-01569-RPM-KMT, 2010 WL 1553786, at *11 (D. Colo. Mar. 19, 2010) (citing *Fanning v. Permanent Solution Indus., Inc.*, 257 F.R.D. 4, 7 (D. D.C. 2009)).

request punitive damages, and is thus not entitled to punitive damages.

Title VII allows compensatory damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other nonpecuniary losses.[48] The amount of compensatory damages recoverable is limited; if the defendant has more than 14 but less then 101 employees, plaintiff's compensatory damages cannot exceed $50,000.[49] The Court finds the limitation applicable here, as plaintiff presented no evidence that defendant employs more than 101 employees.

At the hearing, plaintiff testified to the social ostracization and humiliation she personally felt, and that she heard her children express, arising out of ongoing and baseless accusations by Bentwood staff that she was residing in the United States illegally, as well as the fact that she was terminated. Plaintiff testified that she had worked at Bentwood as its onsite manager for three years before she was terminated. Having established her reputation there, she testified that there were rumors among Bentwood employees, even at her children's school, as to why plaintiff was terminated. Plaintiff testified that even at the time of the hearing, she and her children were suffering humiliation, as they continued to live in the same community and her children continued to attend the same school as Bentwood residents. Plaintiff testified that she was uncertain how to quantify her pain and suffering and asked for $50,000 in compensatory damages. The Court finds this award appropriate.

In addition to compensatory damages, Title VII allows equitable relief, such as back pay

---

[48] 42 U.S.C. § 1981a(b)(3).

[49] *Id.*

16

and front pay.[50] Back pay is the amount of money plaintiff would have earned from the date she was unlawfully terminated to the date the first judgment is entered.[51] In that time, plaintiff is responsible for mitigating her damages. "Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable."[52] Plaintiff provided sworn testimony and a spreadsheet of her estimated damages. She itemized her income and benefits while working at Bentwood, and separately itemized her income and benefits while working for subsequent employers. By subtracting the difference between her earnings at Bentwood and her earnings with each subsequent employer, she estimated her back pay and seeks $63,066.35. The Court finds this amount appropriate.

It is within the court's discretion to award prejudgment interest on a plaintiff's back pay award.[53] The Court opts not to award prejudgment interest, particularly since plaintiff's judgment comes approximately one year after she filed this lawsuit.

Plaintiff also produced evidence at the hearing in support of her request for front pay. Front pay is "money awarded for lost compensation during the period between judgment and reinstatement or in lieu of reinstatement."[54] Plaintiff calculated her average loss each year to be

---

[50]42 U.S.C. § 1981a(b)(2); 42 U.S.C. § 2000e-5(g); *Medlock v. Ortho Biotech, Inc.*, 164 F.3d 545, 556 (10th Cir. 1999).

[51]*Daniel v. Loveridge*, 32 F.3d 1472, 1477 (10th Cir. 1994).

[52]42 U.S.C. § 2000e-5(g)(1).

[53]*Loeffler v. Frank*, 486 U.S. 549, 557 (1988) ("Prejudgment interest, of course, is 'an element of complete compensation'") (quoting *West Virginia v. United States*, 479 U.S. 305, 310 (1987)); *Daniel*, 32 F.3d at 1478; *Leidel v. Ameripride Servs., Inc.*, 276 F. Supp. 2d 1138, 1147 & n.36 (D. Kan. 2003) (applying the interest rate set by the Internal Revenue Service on overpayments and underpayments, 26 U.S.C. § 6621, and holding that such interest should be compounded annually); *Rahn v. Junction City Foundry, Inc.*, 161 F. Supp. 2d 1219, 1241 (D. Kan. 2001) (awarding prejudgment interest at the Kansas statutory rate of ten percent, K.S.A. § 16-201).

[54]*Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 848 (2001).

17

$57,119.40. She requests half that amount, $28,559.70, as annual future lost wages. Based on an estimated annualized loss of $28,559.70 per year, plaintiff requests front pay for a three year period, totaling $85,679.10 in future damages. The Court finds this award of damages appropriate, and further finds appropriate an award of postjudgment interest pursuant to 28 U.S.C. § 1961(a), by which "the court achieves the statutory goal of compensating the plaintiff while removing defendant's incentive to delay payment of the judgment."[55]

Defendants have raised no argument that plaintiff's award of damages is limited to the amount of her prayer in her Complaint. The Court recognizes that Fed. R. Civ. P. 54(c) requires that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." This rule protects a defendant's due process rights with respect to the amount of damages he must pay.[56] "If plaintiff had demanded greater relief, defendant might have chosen to defend the action on the merits; thus it would be unjust to award by default relief greater than that which plaintiff demanded in the pleadings."[57]

In this action, initiated by plaintiff filing both a form *pro se* Civil Complaint, and a form *pro se* Employment Discrimination Complaint, plaintiff checked boxes praying for actual damages, punitive damages, costs and fees in litigating this case, and "such other relief as may be appropriate, including attorneys fees, if applicable; and plaintiff inartfully articulated her damages to include "monetary restitution," "$18,000 = as restitution for been unlawfully victimized," and

---

[55]*Leidel v. Ameripride Servs., Inc.*, 276 F. Supp. 2d 1138, 1148 (D. Kan. 2003); *see DeMarsh v. Tornado Innovations, L.P.*, Case No. 08-2588-JWL, 2009 WL 3720180, at *7 (D. Kan. Nov. 4, 2009) (awarding postjudgment interest on a default judgment); *Albert v. Wesley Health Servs.*, Case No. 00-2067-KHV, 2001 WL 503241, at *3 (D. Kan. May 10, 2001) (same).

[56]*Albert*, 2001 WL 503241, at *1 (citing 10 Moore's *Federal Practice* § 54.71 and 54-127 (Matthew Bender 3d ed.)).

[57]*Id.*

18

also claimed damages arising from being terminated, and for "loss of respect & reputation." Defendants did not challenge plaintiff's evidence of damages and have raised no argument that her award of damages is limited to any particular amount. Notably, this case is not in the typical posture of a default judgment; here, defendants had an opportunity to challenge plaintiff's entitlement to damages, the amount of damages, and whether her award should be limited. Defendants did not, and this Court concludes that under these circumstances, defendants due process rights have not been denied.

Thus the Court finds sufficient evidence and an appropriate basis to award plaintiff the total damages she requested at the hearing, $198,745.45, which is comprised of: $50,000 in compensatory damages; $63,066.35 in back pay; and $85,679.10 in front pay. The Court further awards statutory postjudgment interest. Neither plaintiff nor her attorney requested an award of costs or attorneys fees at the hearing.

**IT IS THEREFORE ORDERED BY THE COURT** that defendants' Motion to Set Aside Default Judgment (Doc. 27) is **denied,** and plaintiff's Application for Default Judgment (Doc. 22) is **granted.** The Court enters default judgment against defendant Bentwood Place Apartments, LLC in the amount of $198,745.45, and postjudgment interest at the rate provided in 28 U.S.C. § 1961(a).

**IT IS SO ORDERED.**

Dated: July 26, 2010

                                                S/ Julie A. Robinson
                                               JULIE A. ROBINSON
                                               UNITED STATES DISTRICT JUDGE